UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UEI, INC.,

    Plaintiff,

v.                                                                                    Case No. 1:06-cv-122

                                                                  Hon. Wendell A. Miles

QUALITY FABRICATED METALS, INC.,

    Defendant.

_____/

OPINION AND ORDER

       This matter is presently before the Court on Defendant Quality Fabricated Metals, Inc.'s Motion to Dismiss or, in the Alternative to Stay Proceedings (docket #6).  Plaintiff UEI, Inc. (UEI) filed this case in the Kent County Circuit Court asserting state law claims.  Defendant Quality Fabricated Metals, Inc. (QFM) removed the action to federal court pursuant to this Court's diversity jurisdiction.  For the following reasons, the Court denies the motion.

Factual Background

       QFM, an Ohio corporation, manufactures automobile parts. UEI, a Michigan corporation, fabricates tools and dies used primarily for manufacturing automobile parts.  On June 10, 2004, QFM issued a purchase order to UEI under which UEI was to build a series of progressive dies and other related parts for a contract price of $567,875.  UEI began production, but in the autumn of 2004, QFM requested that the unfinished dies be delivered to its facility in Ohio for inspection by the end user of the dies.  UEI delivered the dies as requested.  UEI alleges that when it

delivered the dies to QFM, $120,980 was still owed on the contract price. UEI offered to complete the fabrication of the dies, but QFM advised that it intended to complete the project at its own facility.

UEI claims that QFM breached the parties' contract by refusing to allow UEI to complete the project, and by refusing UEI's demand for full payment on the purchase order. UEI further claims that it has perfected a lien on the three dies that are the subject matter of this suit pursuant to Michigan's Special Tools Lien Act, MICH. COM. LAWS § 570.541 et seq., and has properly given the end user, Mayflower Vehicle Systems, notice of its intent to foreclose on the lien.

According to QFM, it requested that the dies be delivered to its facility because UEI failed to complete the project within the time required by the contract. Further, upon inspection of the dies, it concluded that the dies did not meet the standards required under the contract. QFM maintains that it declined to return the dies to UEI because it was under no obligation to do so, and denies that it is indebted to UEI. QFM claims that UEI owes it more than $25,000 for damages caused by UEI's breach of the parties' contract.

Procedural Background

On November 18, 2005, QFM filed a lawsuit against UEI in the Court of Common Pleas, Mahoning County, Ohio, asserting breach of contract based upon UEI's alleged breach of the purchase order. UEI was served on or about December 8, 2005. UEI filed its answer in that case and a motion to dismiss on jurisdictional grounds. QFM anticipates that the suit will go to trial or be resolved by dispositive motion before the end of 2006.

On November 28, 2005, UEI filed the present action claiming breach of contract and lien foreclosure in the Kent County Circuit Court. QFM was served on January 23, 2006, and has

2

filed its answer. On February 17, 2006, QFM removed the action to federal court. UEI filed a response opposing the motion.

## Discussion

QFM argues that this action should be dismissed based upon the abstention doctrines set forth in Younger v. Harris, 401 U.S. 37 (1971) and Colorado River Water Conservation District v. United States, 424 U.S. 800 ( 1976). In the alternative, QFM seeks to stay these proceedings until the Ohio lawsuit is resolved. UEI argues that Younger applies only to state criminal prosecutions, and the present situation does not fall within the category of cases in which Colorado River abstention is appropriate.

The Supreme Court in Younger held that the district court should have abstained from exercising jurisdiction over the plaintiff's federal action seeking injunctive relief against state officials with regard to a state criminal proceeding pending against the federal plaintiff. The Supreme Court explained that "the normal thing to do when federal courts are asked to enjoin pending proceedings in state courts is not to issue such injunctions." Younger, 401 U.S. at 45. A federal court should not enjoin a pending state criminal case except in the very unusual situation where an injunction is necessary to prevent great and immediate irreparable injury. Id. at 43. The Supreme Court has subsequently extended Younger to state civil proceedings in which important state interests are involved. See Huffman v. Pursue Ltd., 420 U.S. 592 (1975) (applying Younger to state court civil nuisance action against an adult theater); Ohio Civil Rights Comm'n v. Dayton Christian Sch., 477 U.S. 619, 620 (1986) (holding Younger applies to a sex discrimination claim in religious schools before the Ohio Civil Rights Commission); Middlesex County Ethics Comm. v. Garden State Bar Ass'n, 457 U.S. 423, 432-34 (1982) (applying

3

Younger to New Jersey ethics proceeding against an attorney for criticizing a state court judge). Younger also applies in cases where a party is seeking a declaratory judgment because declaratory judgments "involve 'precisely the same interference with and disruption of state proceedings' as an injunction." Carroll v. City of Mount Clemens, 139 F.3d 1072, 1074 (6th Cir. 1998), quoting Samuels v. Mackell, 401 U.S. 66, 72 (1971). The Supreme Court has referred to the abstention principles enunciated in Younger as the "equitable restraint doctrine." City of Columbus v. Leonard, 443 U.S. 905, 907 (1979); and see Louisville Area Inter-Faith Comm. for United Farm Workers v. Nottingham Liquors, Ltd., 542 F.2d 652, 654-55 (6th Cir.1976) (applying "doctrine of equitable restraint" arising out of Younger v. Harris).

While Plaintiff's argument that Younger applies strictly to criminal proceedings is not correct, Younger's application is generally limited to actions in which the federal plaintiff is seeking declaratory and injunctive relief. See, e.g., Rivers v. McLeod, 252 F.3d 99, 101-02 (2d Cir. 2001) (state claims for money damages are not barred by the Younger doctrine); Alexander v. Ieyoub, 62 F.3d 709, 713 (5th Cir. 1995) ("abstention doctrine does not apply to a suit seeking only damages"); see also Quackenbush v. Allstate Ins. Co., 517 U.S. 706, 719 (1996) (holding that in cases removed from state court, remand under abstention principles was proper only when discretionary equitable relief was sought); New Orleans Pub. Serv. *v.* Council of New Orleans, 491 U.S. 350, 359 (1989) ( "Thus, there are some classes of cases in which the withholding of authorized **equitable relief** because of undue interference with state proceedings is 'the normal thing to do.' ") (quoting Younger, 401 U.S. at 45) (emphasis added). In the present case, both parties seek only monetary damages arising from a contract dispute. Neither party is asking this Court to enjoin, or otherwise interfere, with the Ohio state court proceeding. Accordingly,

4

Younger does not apply in this case.

Defendant also argues that abstention is warranted under Colorado River.  "Generally, as between state and federal courts, the rule is that the pendency of an action in the state court is no bar to proceedings concerning the same matter in the Federal court having jurisdiction," Colorado River, 424 U.S. at 817 (internal quotations omitted), although there are certain categories of cases in which abstention is proper.  The Supreme Court categorized three situations in which it had previously found federal abstention proper: (1) cases that present federal constitutional issues that "might be mooted or presented in a different posture by a state court determination of pertinent state law;" (2) cases that present "difficult questions of state law bearing on policy problems of substantial import whose importance transcends the result in the case then at bar;" and (3) cases in which federal jurisdiction has been invoked for the purpose of restraining valid, good faith state criminal proceedings.  Id. at 814-17 (internal citations omitted).  Plaintiff correctly argues that none of these situations is implicated in this case.  No federal question is raised. The case is based upon state contract law, and has significant importance only to the parties involved.  There are no state policy issues involved, and, as  previously discussed, the case pending in the Ohio state court is not a criminal or quasi-criminal proceeding.

However,  Colorado River also recognized a fourth category of cases in which abstention might be proper out of respect for "considerations of [wise] judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation." 424 U.S. at 817 (citing Kerotest Mfg. Co. v. C-O-Two Fire Equipment Co., 342 U.S. 180, 183 (1952)). Abstention under Colorado River, is "an extraordinary and narrow exception to a federal court's unflagging duty to exercise jurisdiction." Id.  "Abdication of the obligation to decide cases can

be justified under [the abstention] doctrine only in the exceptional circumstances where the order to the parties to repair to the State court would clearly serve an important countervailing interest." Id. at 813. Apart from those "exceptional circumstances" when Colorado River may be invoked to prevent duplicative litigation between state and federal courts, "the pendency of an action in the state court is no bar to proceedings concerning the same matter in the Federal Court," Id. at 817. "[T]he circumstances permitting the dismissal of a federal suit due to the presence of a concurrent state proceeding for reasons of wise judicial administration are considerably more limited than the circumstances appropriate for abstention." Id. at 818.

In Colorado River and later cases, the Supreme Court identified the following factors that a federal court should consider when deciding whether abstention due to a parallel state case is appropriate:

> (1) whether the state court has assumed jurisdiction over any rea or property, (2) whether the federal forum is less convenient to the parties, (3) avoidance of piecemeal litigation; (4) the order in which jurisdiction was obtained, (5) whether the source of governing law is state or federal, (6) the adequacy of the state court action to protect the federal rights of the plaintiff, (7) the relative progress of the state and federal proceedings, and (8) the presence or absence of concurrent jurisdiction.

Romine v. Compuserve Corp., 160 F.3d 337, 340-41 (6th Cir. 1998). However, "the decision whether to dismiss a federal action because of parallel state-court litigation does not rest on a mechanical checklist, but on a careful balancing of the important factors as they apply in a given case, with the balance heavily weighted in favor of the exercise of jurisdiction." Moses H. Cone Mem'l Hosp. v. Mercury Const. Corp., 460 U.S. 1, 16 (1983).

Before the Colorado River doctrine can be applied, the district court must first determine

that the concurrent state and federal actions are actually parallel. <u>Romine v. Compuserve Corp.</u> 160 F.3d 337, 339 (6th Cir. 1998).  Both the case before this Court and the case pending in the Ohio state court arise from a purchase order/contract that each party is claiming was breached by the other party.   The parties are the same in both cases, and there are no additional parties named in either suit.  Both cases seek the same relief.  Accordingly, the cases are parallel.  The Court must next consider the eight relevant factors, guided by the rule that its "task is to ascertain whether there exist 'exceptional' circumstances, the 'clearest of justifications,' that can suffice under <u>Colorado River</u> to justify the surrender of that jurisdiction." <u>Moses</u>, 460 U.S. at 25-26.

Turning to the relevant factors this Court must consider, both this case and the Ohio case allege breach of contract. The Ohio state court has not assumed jurisdiction over any rea. The first factor, therefore, weighs against abstention. <u>Romine</u>, 160 F.3d at 341 (explaining that where no property is involved, this factor is inapposite and weighs against abstention); <u>accord</u> <u>PaineWebber v. Cohen</u>, 276 F.3d 197, 207 (6th Cir. 2001).  Second, the federal forum is not less convenient to the parties.  QFM contends that the Western District of Michigan is an inconvenient forum because QFM is an Ohio corporation, the dispute arose in Ohio, and most of the witnesses with information concerning performance of the contract are located in Ohio. On the other hand, UEI is a Michigan corporation based in the Western District of Michigan.  UEI's dissatisfaction with QFM arose in Michigan, and the witnesses that will testify on its behalf will likely be from Michigan.  While the Western District of Michigan may be inconvenient for QFM, Ohio would be equally inconvenient for UEI.  Thus, this factor weighs against abstention. <u>See</u> <u>Westfield v. Welch's</u>, 170 F.3d 116, 122 (2d Cir. 1999) (finding that where the geographical factor is neutral, that factor favors retention of the case in federal court).

The third factor to consider is the avoidance of piecemeal litigation, which was the dominant factor in Colorado River. QFM argues that staying this case is the only way to avoid piecemeal litigation and the potential for conflicting adjudications. In Colorado River, the federal government sued "some 1,000 water users," seeking a declaration of the government's rights to waters in certain rivers and tributaries. Colorado River, 424 U.S. at 805. The Supreme Court recognized "that the [McCarran] Amendment represents Congress's judgment that the field of water rights is one peculiarly appropriate for comprehensive treatment in the forums having the greatest experience and expertise, assisted by state administrative officers acting under the state courts." Moses, 460 U.S. at 16 (1983). Whenever there are parallel cases in federal and state courts, there is always a potential for inconsistent determinations of the facts or the law. Thus, this factor standing alone would always weigh in favor of abstention. However, "the pendency of an action in the state court is no bar to proceedings concerning the same matter in the Federal court having jurisdiction." Colorado River, 424 U.S. at 817. The "mere potential for conflict in the results of adjudications, does not, without more, warrant staying exercise of federal jurisdiction." Id. at 816. The threat of piecemeal litigation is not sufficient to support a decision to abstain under Colorado River. The Court must determine if "exceptional circumstances" exist, such as those in Colorado River, which justify concern for piecemeal litigation. QFM has not identified any "exceptional circumstances"or particular inefficiencies beyond those normally inherent in parallel litigation. Moreover, under the circumstances here, there is little risk of inconsistent outcomes. Both actions may proceed until a judgment is obtained in one of the actions, at which time the doctrine of "res judicata" will be applicable in the second suit. The general rule is that both a federal and state court may "proceed to judgment

until one becomes preclusive of the other." Chase Brixton Health Serv's., Inc. v. Maryland, 411 F.3d 457, 462 (4th Cir. 2005). Accordingly, this factor does not weigh in favor of abstention.

The fourth factor to consider is the order in which jurisdiction was obtained. This factor is the strongest basis for abstaining because it is clear that QFM filed in the Ohio court on November 18, 2005, while UEI filed its suit in the Michigan state court on November 28, 2005. "[P]riority should not be measured exclusively by which complaint was filed first, but rather in terms of how much progress has been made in the two actions." Moses, 460 U.S. at 21. It appears that the lawsuit in Ohio has progressed further than this case. Discovery has begun, there is a pending motion to dismiss filed by UEI, and QFM opines that the matter will go to trial before the end of the year. The Court finds that this factor weighs in favor of abstention.

Whether state or federal law governs the proceeding is the fifth factor for consideration. Clearly state law governs the claims in this breach of contract case; neither party has raised a claim grounded in federal law. This alone cannot justify abstention from a case which is properly before the federal court on the basis of diversity. The present action does not involve complex questions of state law that a state court would be best able to resolve. See, e.g. St. Paul Ins. Co. v. Trejo, 39 F.3d 585, 590 (5th Cir. 1994) (explaining that in the exercise of diversity jurisdiction federal courts are routinely called upon to interpret state law); Noonan South, Inc. v. County of Volusia, 841 F.2d 380, 382 (11th Cir. 1988) (holding that the application of Florida law in a federal diversity case did not favor abstention where no "complex questions of state law" were at issue); Miller Brewing Co. v. ACE U.S. Holdings, 391 F.Supp.2d 735, 743 (E.D.Wis. 2005); Kingland Systems Corp. v. Colonial Direct Financial Group, Inc., 188 F.Supp.2d 1102, 1121 (N.D. Iowa 2002) (in a diversity action, the absence of any federal claims is not an "exceptional

9

circumstance"); Monahan v. Holmes 139 F.Supp.2d 253, 260 (D.Conn. 2001) (finding abstention inappropriate where questions presented were not complex or unfamiliar to the federal court).

The state court's adequacy to protect the federal rights of either of the parties is not an issue here, so this factor weighs against abstention. The relative progress of the state and federal proceedings, factor seven, was discussed under factor four, and weighs in favor of abstention. The final factor, the presence or absence of concurrent jurisdiction, is of little significance as both courts have jurisdiction. See PaineWebber, 276 F.3d at 208 ("The presence of concurrent jurisdiction only marginally, if at all, favors abstention"). Concurrent jurisdiction does not, in and of itself, negate the strong presumption against abstention. Moses, 460 U.S. at 25.

## Conclusion

Abstention under Younger v. Harris is not appropriate under the circumstances of this breach of contract case where the parties are not seeking equitable relief. Considering that Colorado River abstention is an extraordinary and narrow exception to the Court's "unflagging duty" to exercise its jurisdiction, and finding that, on balance, the factors do not weigh heavily in favor of abstention, the Court concludes it would be inappropriate to dismiss or stay this action pursuant to Colorado River. Accordingly, the Court DENIES the Defendant's Motion to Dismiss or, in the Alternative to Stay Proceedings (docket #6).

So ordered this 1st day of June, 2006.

                                                          /s/ Wendell A. Miles
                                                          Wendell A. Miles
                                                          Senior U.S. District Judge